NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re | : | Bankruptcy Case No. 11-29328 |
| Szilvia Fejes | : | Chapter 7 |
| Debtor | : | |
| Richard Repack | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 11-2455 |
| Szilvia Fejes | : | **MEMORANDUM OPINION** |
| Defendant | : | |

## **APPEARANCES**

<u>Attorneys for Plaintiff</u>
Joseph I. Windman, Esquire
4400 Route 9 South
Suite 3000
Freehold, New Jersey 07728

<u>Attorney for Defendant</u>
Paul J. Riviere, Esquire
Riviere Cresci & Singer, LLC
222 Schanck Road – Suite 201
Freehold, New Jersey 07728

On December 20, 2011, Richard Repack filed a fourth amended complaint seeking to deny the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(A), 727(a)(4)(D) and 727(c)(1). The trial commenced on November 29, 2012, and concluded on March 1, 2013. The court's findings of fact and conclusions of law follow.

Procedural history

Richard Repack filed a complaint against the Debtor seeking denial of discharge on October 7, 2011.[1] The Debtor filed a motion to dismiss, and Mr. Repack filed a cross-motion to enter judgment. The court granted the motion to dismiss the § 727(a)(2) and (a)(3) counts, and granted partial summary judgment on the § 727(a)(4)(A) count finding that three of the five required elements had been established.[2] The parties then entered into a consent order allowing Mr. Repack to file an amended complaint, which he did on December 20, 2011 ("Amended Complaint"). In September 2012, the court denied the parties' motions for summary judgment on the Amended Complaint.[3] The court again denied summary judgment on the § 727(a)(4)(A) count, finding that factual disputes remained regarding the defendant's knowledge and intent. The court dismissed the § 727(a)(4)(D) count. The issues at trial were limited to the two remaining elements of the Third Count of the Amended Complaint: knowledge that a false statement was made, and fraudulent intent.

Factual background

Mr. Repack holds a judgment against the Debtor in the amount of $56,698, based on a default under certain loan agreements. Ms. Fejes filed a voluntary petition of the Bankruptcy Code on June 27, 2011. She did not list her interest in a co-op apartment in Hungary in her

---

[1] Amended complaints were filed on November 12 and November 30, 2012, but the court did not consider those complaints because the amended complaints were not filed in compliance with Fed. R. Civ. P. 15(a)(1).
[2] Order entered December 14, 2011 [Doc. 16]
[3] Order entered October 12, 2012 [Doc. 33]

2

petition or schedules.[4]  She did not mention the co-op to the Chapter 7 trustee at the meeting of creditors.[5]  In December 2011, two months after the filing of this adversary proceeding, the Debtor filed an amendment to Schedule B that listed a 50% interest in a co-op in Bekes, Hungary with an estimated value, before deducting costs, of $12,470.  The Debtor amended Schedule C to exempt the value of the co-op under § 522(d)(5).

## Conclusions of law

It is well-settled law that a denial of a debtor's discharge is a drastic remedy, so §727 must be construed strictly in favor of the debtor.[6]  A discharge in bankruptcy, however, is "a privilege, not a right, and may only be granted to the honest debtor."[7]  Accordingly, "where a debtor has been dishonest in his dealings with the court or his creditors, it may be appropriate to deny his discharge, notwithstanding that an underlying goal of federal bankruptcy law is to provide a debtor with a fresh start."[8]  The creditor opposing discharge has the burden of establishing the requisite elements by a preponderance of the evidence.[9]

Section 727(a)(4)(A) provides that the court shall deny the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account."[10]  The purpose of § 727(a)(4) is to "encourage debtors to completely and candidly disclose their assets, income, expenses, and liabilities so that creditors have adequate information

---

[4] Ex. D-1 (bankruptcy petition and schedules)

[5] Ex. D-7 (Transcript of 341 meeting)

[6] Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge … is an extreme step and should not be taken lightly")

[7] Desiderio v. Parikh (In re Parikh), 456 B.R. 4, 27-28 (Bankr. E.D.N.Y. 2011)

[8] Wachovia Bank v. Spitko (In re Spitko), 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006)

[9] Haupt v. Belonzi (In re Belonzi), 476 B.R. 899 (Bankr. W.D Pa. 2012); see also, Fed. R. Bankr. P. 4005 ("on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.")

[10] 11 U.S.C. § 727(a)(4)(A)

about the debtor's estate."[11]  To deny a discharge under §727(a)(4)(A) of the Bankruptcy Code, a plaintiff must establish by a preponderance of evidence that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.[12]  The court has previously found that Mr. Repack has met his burden of establishing elements one, two and five.

The remaining two elements are highly interdependent.  The degree of a debtor's knowledge is necessarily relevant to the intent to defraud.   Ms. Fejes testified that she was unaware that she had an ownership interest in the co-op in Hungary.  She testified that she believed that her parents were the owners because they had provided the money for the purchase and paid the carrying costs.  Ms. Fejes acknowledged that she travelled to Hungary to execute the documents necessary to complete the purchase of the co-op, and that she was aware that the co-op was going to be in her name and her sister's name.  The source of Ms. Fejes's knowledge was unclear, because she testified that she did not read the documents before signing them.  Throughout Ms. Fejes's testimony she was careful always to refer to the co-op as her parent's property, but her testimony seemed contrived.  Overall, her self-serving testimony could not overcome more compelling conflicting evidence.

Mr. Repack presented the testimony of Leslie Russo, a neighbor of Mr. Repack and Ms. Fejes when the couple lived together.  Ms. Russo testified that Ms. Fejes told her that she owned an apartment in Hungary.  Ms. Russo recalled that Ms. Fejes showed her pictures of the apartment and invited her to join Ms. Fejes there in the future.  Although Ms. Russo and Ms.

---

[11] In re Bielan, Miklos & Makrogiannis, 2010 WL 1644175 (Bankr. D.N.J. April 21, 2010)

[12] See, e.g., In re Hannan, 477 B.R. 603, 609 (Bankr. W.D. Pa. 2012); see also, Scimeca v. Umanoff, 169 B.R. 536, 541 (D.N.J. 1993)

Fejes have different interpretations of how close their relationship was, no evidence suggested bias on Ms. Russo's part. Mr. Repack also offered the testimony of James Christos, a worker who installed a boiler in the couple's apartment in 2007. Mr. Christos testified that he remembered a heated argument between Mr. Repack and Ms. Fejes about why she could not get a loan. Mr. Christos recalled that Ms. Fejes said she could not get a loan on the co-op because her sister (the half owner) would not sign for a loan. During cross-examination, counsel attempted to establish that Mr. Christos was biased because he continues to get work from Mr. Repack. The attempt to discredit Mr. Christos might be more compelling were it not for the fact that Mr. Christos's recollections are perfectly consistent with Ms. Fejes's own statements as evidenced by e-mails.

In an e-mail dated March 6, 2008, Mr. Repack asked Ms. Fejes if she would pursue "a loan on your apt in Hungary".[13] Rather than respond that she could not use the co-op as collateral because her parents were the true owners, Ms. Fejes intimated that the hold up on obtaining the loan was her sister.[14] That e-mail is significant for two reasons. First, it supports the testimony of Ms. Russo and Mr. Chritos. Second, it demonstrates that as of March 2008, Ms. Fejes was aware that both she and her boyfriend believed that she owned the co-op in Hungary. The e-mails, coupled with the testimony, undercut Ms. Fejes's attempt to portray the purchase of this co-op as an insignificant event that she did for her parents eight years before, and rarely thought about again.

The court finds that Mr. Repack has sustained his burden of establishing that Ms. Fejes knowingly failed to reveal her interest in the co-op in Hungary. Therefore, Mr. Repack has satisfied four out of the five required elements to prevail under § 727(a)(4)(A).

---

[13] Ex. P-2
[14] Ex. P-3

The more nuanced question is the extent of Ms. Fejes's knowledge, and what that reveals about her intent when she failed to list the co-op on her bankruptcy petition. Ms. Fejes herself testified that on the day she filed the bankruptcy petition, she was aware that the co-op was titled in her name and her sister's name. Ms. Fejes qualified that testimony by stating that she did not know what that meant because she is not familiar with property law. Taking her testimony at face value, the court could find that Ms. Fejes harbored no fraudulent intent when she failed to list the co-op on Schedule A (real property), Schedule B (personal property), or mention it during her § 341(a) meeting of creditors. What proves to be Ms. Fejes's downfall is Question 14 of the Statement of Financial Affairs.[15] Based on Ms. Fejes's age and level of education, it is simply not credible that she failed to understand Question 14. If there was some question about whether her title interest in the co-op qualified as "holding property for another person", Ms. Fejes was obligated to raise that question with her attorney, not to simply state "None". In answering Question 14, Ms. Fejes at best showed reckless disregard for the truth, and at worst had fraudulent intent, but either scenario is sufficient to deny her a discharge. Virtually all courts hold that a "reckless disregard of both the serious nature of the information sought [in a bankruptcy petition] and the necessary attention to detail and accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge".[16] The consistent theme in § 727(a)(4) cases is that it is not up to debtors to decide what is and is not important information for their creditors and trustee to know.[17] The *quid pro quo* for a discharge is full and complete disclosure. The importance of candid disclosure was demonstrated in this case, because once a

---

[15] Question 14 is titled "Property held for another person" and instructs the debtor to "[l]ist all property owned by another person that the debtor holds or controls." Ms. Fejes answered "None".

[16] In re Mondore, 326 B.R. 214, 217 (Bankr. W.D.N.Y. 2005)

[17] *See, e.g.*, In re Bielan, Miklos & Makrogiannis, 2010 WL 1644175 (Bankr. D.N.J. April 21, 2010)

creditor had an opportunity to probe the level of the debtor's ownership interest in the co-op it was revealed that she was not merely a title owner of the property subject to her parent's usufruct rights; she was in fact the one-half owner because her parents apparently never properly perfected their interest under Hungarian law.

## Conclusion

The court finds that Mr. Repack has sustained his burden of establishing the remaining two elements of his § 727(a)(4)(A) cause of action, and will enter judgment in his favor on the Third Count of the Amended Complaint. Mr. Repack should submit a form of order consistent with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: May 29, 2013